### JOHN ARNOLD ET AL., RESPONDENTS, *v.* C. C. STEVENSON, APPELLANT.

One partner cannot bind the interest of his copartner in real estate by mortgage. The deposit for record of a revocation of a power of attorney in the proper office operates under our statute as a notice to all parties dealing with the attorney. By such deposit, the revocation becomes absolute without actual notice to the attorney.

APPEAL from the District Court of the First Judicial District, Storey County, Hon. R. S. MESICK presiding.

*W. H. Clagett,* for Appellant.

There is no equitable lien in favor of the mortgagees. This equitable lien only arises in marshaling the assets of any insolvent firm, and is worked out by the equities existing between the partners, and not otherwise. (See Story's Equity, vol. 2, secs. 1,252, 1,253.)

The complaint is framed to enforce a mortgage, and not an equitable lien.

If we admit the debt to have been a partnership debt, still Coover could not execute a mortgage on joint property to secure that debt.

Arnold *et al. v.* Stevenson.

(Story on Agency, sec. 125; Collyer on Partnership, secs. 462–466.)

This mortgage can only be sustained by holding that Coover had an unrevoked power of attorney when it was executed.

This power was revoked even according to common law principles. Notice to the attorney is revocation so far as he is concerned. It is revoked as to those dealing with an attorney when they receive notice.

Notice may be implied; and when a purchaser or mortgagee buys without the exercise of ordinary prudence, and without investigating those facts which it was his duty to have investigated, notice may be implied. (See 4 Kent, 172 and 179; 6 Wend. 226; 3 Metcalf, 405; 5 Binny, 314; Hoffman's Ch. 366, 372 and 373; 3 Mylne & Keene, 699; 1 Smith, [15 N. Y.] 354.)

It was the duty of respondents to have examined the record to ascertain whether the power of attorney was revoked. Failing to do so was gross negligence.

The plaintiffs had constructive notice. Whatever instrument the law required to be recorded gives constructive notice. (See Hoffman's Ch. 368, 370; 2 John. 522–524; 3 Cal. 179; 6 Barb. 69–75; 4 Cowan, 605.)

That the Court could extend the time for serving notice of new trial. (See 5 Cal. 62.)

*Reardon & Hereford,* for Respondents.

The power of attorney was not revoked. The statute requiring the recordation of revocations does not dispense with the common law requirement of notice to the attorney. Until such notice, there is no revocation in fact. The statute makes another requirement in addition, that the revocation shall not take effect until recorded. The recording of a revocation before absolute notice to the attorney, is simply a nullity. At common law the giving of notice was revocation. Here the revocation is made by giving a *written* notice and filing a copy for record.

This was a mortgage of partnership property to pay a partnership debt. It is within the power of one partner to execute such a mortgage. (Washburne on Real Property, pages 442 and 159;

Story on Partnership, sec. 93 ; Story's Equity Jurisprudence, sec. 674.)

·Opinion by LEWIS, C. J., full Bench concurring.

This action was brought to foreclose a mortgage executed as follows :

" Charles S. Coover, C. C. Stevenson,—by Chas. S. Coover, his attorney in fact."

The pleadings and finding of facts by the Court show that at the time the debt was contracted and the mortgage executed, the defendants Coover and Stevenson were copartners in a certain quartz mill located at Gold Hill, in the County of Storey ; that the defendant Stevenson, on the seventh day of March, 1863, executed to Coover a power of attorney, whereby he was fully empowered to execute the mortgage upon which this action is brought ; that this power of attorney was duly recorded on the tenth day of March ; and that on the fourth day of December, A.D. 1863, Stevenson deposited for record in the same office where the power of attorney was recorded an instrument revoking the power of attorney. Immediately after this was done, he left for the Atlantic States, without giving his agent notice of the revocation, or taking any steps to inform the public of it. On the twenty-second day of January, A.D. 1864, about a month and a half after the revocation had been recorded, the defendant Coover executed the mortgage in the manner above mentioned on the quartz mill owned by himself and Stevenson.

It seems to be conceded that neither the agent nor the plaintiffs had actual notice of the revocation until after the execution of the mortgage. Stevenson now defends this action, claiming that at the time of the execution of the mortgage, the power of attorney had been revoked, and that Coover's execution of it on his behalf was therefore unauthorized.

Judgment was awarded in favor of the plaintiffs in the Court below, and the mortgaged premises were decreed to be sold to satisfy the plaintiffs' demand.

In support of this decree, counsel for respondents takes the position here : 1st. That as a partner of Stevenson, Coover possessed the authority to execute the mortgage ; and 2d. That the power of

attorney was not revoked by the mere deposit for record of the instrument of revocation, but that to complete the revocation it was necessary to give actual notice to the agent and to those with whom he dealt.

We are unable to agree with counsel upon either of these propositions.

If Coover, by virtue of the partnership relations, had the power to convey or mortgage the real estate of the partnership, the manner in which he signed the deed, so long as it was executed for and on behalf of the firm, would be a matter of little or no consequence. If he possessed the authority to sign the firm name of Coover & Stevenson to the deed, and thereby convey the interest of his co-partner, the instrument would doubtless be as effectively executed by the signing of his own name and that of his partner, as he did in this case, as if he had signed the partnership name to it. But it is unnecessary to discuss that question, for the law is clear and emphatic that the agency resulting from partnership relations does not authorize one partner to dispose of the real estate of the firm. The general implied powers of a partner do not extend to binding the firm by instruments under seal. (American Leading Cases, 449; Id. 499.)

Courts of Equity, for some purposes and to some limited extent, hold that the real estate of the partnership is subject to the same rules that govern the stock in trade. It is so held for the purpose of making it subject to discharge the partnership liabilities in preference to the personal liabilities of the individual partners, and also for the purpose of giving the creditors of the firm and the continuing or surviving partner a lien upon it for partnership indebtedness; but in the note to *Coles* v. *Coles,* 1 American Leading Cases, 499, it is said: "As regards the power of disposition, land held as partnership stock is not subject to the rule which makes each partner the agent of the firm. Neither can sell more than his individual interest unless he have from the other a sufficient special authority for that purpose." We conclude, therefore, that without special authority from Stevenson, Coover had no power to mortgage his copartner's interest in the real estate of the firm.

This brings us to the consideration of the question whether the deposit of the instrument of revocation in the office where the

Arnold *et al. v.* Stevenson.

power of attorney had been recorded, constituted a complete revocation; or whether it was necessary not only to file such instrument for record, but in addition thereto to give actual notice of the revocation to the agent and those with whom he dealt before the power was extinguished. At common law the revocation became effectual as to the agent from the time he received notice of it, and as to those with whom he dwelt from the time it was made known to them. " Until, therefore," says Mr. Story, in his work on Agency, Section 47, " the revocation is so made known, it is inoperative. If known to the agent as against his principal, his rights are good; but as to third persons, who are ignorant of the revocation, his acts bind both himself and his principal." This notice, as required by common law, it is admitted, was not given in this case, either to the agent or the plaintiffs. It is necessary, therefore, to inquire what effect the statute of this State has upon the requirements of the common law; whether the deposit for record of the instrument of revocation dispenses with all other acts and notice; or whether the Registry Act requires that to be done in addition to the requirements of the common law. After a careful examination of the statute, we are impelled to the conclusion that the deposit for record of the instrument is in lieu of the actual notice required by the common law, and that it dispenses with the necessity of any other notice. Section 24 of an Act of the Legislature of the Territory of Nevada, entitled " An Act concerning Conveyances," approved November 5th, 1861, declares that " every conveyance of real estate, and every instrument of writing setting forth an agreement to convey any real estate, or whereby any real estate *may be affected,* proved, acknowledged and certified in the manner prescribed in this Act, to operate as notice to third persons, shall be recorded in the office of the Recorder of the county in which such real estate is situated; but shall be valid and binding between the parties thereto without such record." By Section 25 it is provided that " every such conveyance or instrument of writing acknowledged or proved, certified and recorded in the manner prescribed in this Act, shall, from the time of filing the same with the Recorder for record, impart notice to all persons of the contents thereof; and subsequent purchasers and mortgagees shall be deemed to purchase and

take with notice." Section 27 of the same Act makes it necessary to record all powers of attorney containing a power to convey real estate in the manner in which other instruments affecting real estate are required to be recorded; and the section following declares that "no such power of attorney or other instrument, certified and recorded in the manner prescribed in the preceding section, shall be deemed to be revoked by any act of the party by whom it was executed, until the instrument containing such revocation shall be deposited for record in the same office in which the instrument containing the power is recorded." If an instrument revoking a power of attorney to convey land is an instrument by which " real estate may be affected," the conclusion would seem to be invincible that the filing of it for record in the office where the power itself is recorded, operates as notice of its contents to all persons with whom the agent may afterward deal on behalf of his principal. This is the effect explicitly given to all such instruments by the twenty-fifth section of the Act before referred to, when they have been filed for record in the proper office.

Is such instrument, then, one whereby real estate, or the title to land, may be affected? The words of the statute are as broad and comprehensive as any general words can possibly be. It will be observed, also, that they include not only those instruments which may immediately affect real estate, but likewise those whereby it may immediately produce the same result. A power of attorney to convey real estate would undoubtedly be included in the general words of Section 24. It is clearly an instrument " whereby real estate may be affected." It was said in *Williams* v. *Berbick et als.*, (1 Hoffman's Chancery, 369) that words similar to those employed in Section 24 included a power of attorney to assign a mortgage. We are unable to see how an instrument which merely gives the power to sell or convey land can be considered an instrument whereby real estate may be affected, any more than the instrument of revocation, by which not only the power to sell or convey is extinguished, but even titles to land created under that power, may be utterly defeated. Under the power of attorney, real estate may be conveyed; by the instrument revoking that power, the title so conveyed may be defeated. To destroy or defeat a title to land is surely affecting real estate as much as to convey or create a title.

Until the filing of the instrument of revocation, the authority of the agent to bind his principal as to those dealing with him in good faith is undoubted. A conveyance made by the agent to a *bona fide* purchaser for a valuable consideration, before the revocation is deposited for record, would bind the principal; but suppose such instrument is so deposited for record, and notice of that fact is brought to the knowledge of a person who afterwards purchases from the agent: in such case the instrument of revocation would completely defeat the conveyance to him, and continue it in the principal. Suppose A, the duly authorized agent of B, conveys land to C, after both agent and purchaser are notified that the power of attorney is revoked, but before the instrument of revocation is deposited for record, and C conveys to D, a *bona fide* purchaser, for a valuable consideration, before the instrument is deposited, there is no doubt, we apprehend, that D would get a good title as against the principal; but, if before the conveyance by the agent, the instrument of revocation had been filed, and notice thereof given to the agent and his grantee, in such case it is quite evident that D would get no title whatever from his grantor. In that case, certainly, the direct effect of the instrument would be to defeat the conveyance from C to D, and therefore it seems to us it can easily be included in the broad language of the statute as affecting the title to land, which is synonymous with real estate.

But there is further reason for the conclusion to which we have arrived: Section 28 clearly contemplates that the instrument containing the revocation shall be recorded. It declares that the power shall not be deemed revoked until such instrument is deposited for record. True, it does not in terms require the instrument to be acknowledged, or proved and certified. But the very absence of those requirements in that section, while it requires the instrument to be recorded, shows that the framers of that Act believed it to be included in the general provisions of Section 24.

Again, if it is not one of those instruments mentioned in the twenty-fourth and twenty-fifth sections, and if the filing of it for record does not impart notice of its contents to third persons, why is it required to be recorded at all? The Judge below concludes that the deposit for record is an act to be done in addition to those required by the common law. We

think not.   Unless the intention of the Legislature be obvious, no statute should be so construed as to make it impose onerous duties upon individuals, in addition to those required by the common law, unless it be for the purpose of curing some defect, or affording some remedy in which the common law is deficient.   The law upon this subject was complete and perfect, so far as the agent and the public were concerned, before the passage of the Act.   It threw every safeguard around the public, and gave the agent ample protection from any negligence or imposition on the part of the principal.   The only material defect which seemed to exist in the common law was the failure to give the principal a speedy and convenient means of revoking the power of his agent.   It can readily be conceived how difficult it would often be for a principal to protect himself from the acts of an agent whose authority he had revoked, when he was compelled to notify the entire community of the fact so as to bring the knowledge of it home to each individual with whom the agent might deal after his authority had in fact been revoked.   It is not improbable that it was this very difficulty which was sought to be remedied by the twenty-eighth section referred to.

The recording of the instrument was evidently intended to operate as a notice to all who might have dealings with an agent.   If this be not the object, the law requires a superfluous and useless act to be done, for we can see no other object to be accomplished by it. That requirement is not made merely for the purpose of evidence, for if such were the case, the revocation of the power would not be made to depend upon it.   It is made the ultimate and indispensable act by which the revocation of the power is perfected.   Without it, the agent's power, to a limited extent at least, continues unrevoked. Indeed, the primary object of all registry law is to avoid fraud by charging all persons purchasing, or otherwise becoming interested in real estate, with notice of the real condition of the title.   When, therefore, the statute requires an instrument of this kind to be recorded, it is fair to presume, at least, that it is for the purpose of imparting notice of its contents to third parties, when no other purpose is mentioned ; and if it does operate as such notice, where is the necessity of the actual notice to third parties, required at common law ?

We have endeavored to show that the instrument of revocation,

when deposited for record, imparts notice of its contents to all parties dealing with the agent after such filing for record.    It is next to be determined whether the statute requires actual notice to the agent, who, it is admitted, is not chargeable with constructive notice by the filing for record of the instrument of revocation.    Though the intention of the Legislature is not very clearly expressed, we conclude that the revocation is complete when the instrument of revocation is filed for record, and that no actual notice to the agent is required.    We are brought to the conclusion that this was the purpose of the Legislature from the fact that a certain act is required to be done before the power can be revoked ; when such act is done, the conclusion is natural that the revocation was intended to be complete.    Section twenty-eighth of the Act concerning Conveyances, declares that no power of attorney recorded in the manner prescribed by law, " shall be deemed to be revoked by any act of the party by whom it was executed, until the instrument containing such revocation shall be deposited for record in the same office in which the instrument containing the power is recorded."    The inevitable conclusion from this language is, that when the instrument of revocation is so filed, the revocation shall be deemed complete.    This, it seems to us, is the best and safest rule to be adopted.    If all persons dealing with the agent are chargeable with notice, injury can seldom, if ever, result to the agent, whilst the principal has a speedy and sure means of protecting himself from an evil-disposed servant. Should an agent convey lands after the instrument of revocation has been filed, the purchaser could have no remedy against him, because he is chargeable with notice of the fact that the agent's authority was revoked at the time of the purchase.

Again, if in addition to the filing of the instrument of revocation, the principal is required to give actual notice to his agent, he is placed in a position where he may be ruined by an unscrupulous or malicious agent, who, apprehending an intention to revoke, might avoid his principal so as to defeat his purpose ; or even if notice be given, he may deny it.    Where the law is as doubtful as it is in this case, we think it the duty of the Court to adopt that construction which will be the least likely to produce mischief, and which will afford the most complete protection to all parties, by taking away the power of committing fraud or doing injury.    As all persons deal-

ing with the agent after the instrument of revocation has been filed for record are chargeable with notice of the fact, we can see no great necessity for notifying the agent, and there are many reasons why notice to him should not be made indispensable to the revocation of the power.

The decree of the Court below, so far as it orders a sale of Stevenson's interest in the premises, must be reversed, and it is so ordered.