BOULDER CITY, NEVADA AND JON C. PORTER, MAYOR OF BOULDER CITY, NEVADA; DOUGLAS H. CHRISTENSEN, ROBERT S. FERRARO, ERIC L. LUNDGAARD, JOHN F. PILGRIM, AND EACH OF THEM IN THEIR CAPACITY AS COUNCILMEN OF THE CITY COUNCIL OF BOULDER CITY, NEVADA, APPELLANTS, *v.* CINNAMON HILLS ASSOCIATES AND CINNAMON HILLS ASSOCIATES II, IDAHO LIMITED PARTNERSHIPS; AND GREG LUCE AND BRIAN SELLERS, AS GENERAL PARTNERS OF CINNAMON HILLS ASSOCIATES AND CINNAMON HILLS ASSOCIATES II, RESPONDENTS.

No. 23951

March 30, 1994                    871 P.2d 320

[Rehearing denied June 16, 1994]

*B.G. Andrews,* City Attorney, Boulder City; *Harrison, Kemp and Jones* and *Derek C. Ence,* Las Vegas, for Appellants.

*Vargas & Bartlett,* and *Georlen K. Spangler,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

### FACTS

This appeal arises out of a dispute over the denial of a building permit. Cinnamon Hills Associates applied for a permit to build a senior citizens housing complex in Boulder City, Nevada. The permit was denied. As a result, respondents Cinnamon Hills Associates and its individual general partners (collectively "Cinnamon Hills") filed state and federal claims against appellants Boulder City, Nevada, Mayor Jon C. Porter, the City Council, and individual City Council members (collectively "Boulder City") in the Eighth Judicial District Court.

In 1979, the municipality of Boulder City, Nevada, adopted a growth control ordinance, BCMC 11-37-1 *et seq.* ("Growth Control Ordinance"), to limit commercial and residential growth in its community. The ordinance limited the number of multi-unit construction projects (apartment complexes, hotels, and motels)

that could be developed in the municipality during any one year. The ordinance established this limit at 120 allotments (living units), with a single developer able to obtain only 30 allotments per year. The ordinance also set up an allotment allocation procedure, whereby a prospective builder would submit an allotment application to the Citizens Development Allotment Committee ("Allotment Committee").

Aside from these generalities, the Growth Control Ordinance included an exception to the allotment allocation process with the following pertinent language essential to this appeal:

> APPLICABILITY: This Chapter [Growth Control Ordinance] and the provisions thereof shall apply to all dwelling and hotel-motel developments in the City . . . except for the development of: (A) *Elderly housing and facilities for the handicapped approved by the City.*

(Emphasis added.)

In an effort to define this exception, the City Council passed Resolution 638 in August 1979. The resolution described five requirements that had to be met before a building project for the elderly could be considered for an exception to the Growth Control Ordinance:

> 1.   The development must consist of five units or more.
> 2.   The development must be part of a government sponsored or assisted program restrictive to elderly and/or the handicapped.
> 3.   The applicant shall demonstrate that the development is not being used to circumvent the Growth Control Ordinance.
> 4.   The applicant shall provide restrictive covenants in favor of Boulder City, Nevada, insuring the continued use of the property for purposes of housing the elderly and/or handicapped.
> 5.   That the Boulder City Council shall approve each building permit issued under said Section.

Cinnamon Hills wanted to build a 52-unit apartment complex for senior citizens in Boulder City, Nevada. After obtaining an option to purchase two parcels of development property, Cinnamon Hills applied for a building permit in January 1988. Cinnamon Hills did not go through the normal allotment application process, however, claiming that it fell within the exception established by the Growth Control Ordinance and Resolution 638.

The application was referred to the Allotment Committee for a public hearing and consideration. At this February 29, 1988

hearing, committee members showed concern that the proposed development would diminish property values in the area. The project would house low-income elderly individuals and be subsidized by the federal government.[1] In addition, citizens complained that the building site was three miles from the municipality's essential services (hospitals, doctors, post offices, etc.) and that the steep terrain of the area was not conducive to a living complex for the elderly.

Cinnamon Hills responded by pointing out that it had substantially complied with the requirements of Resolution 638 and was therefore entitled to a permit. The municipality's urban planner agreed with Cinnamon Hills' position and recommended to the Allotment Committee that a building permit be issued. After balancing these competing positions, the Allotment Committee advised the City Council to reject Cinnamon Hills' permit application.

Cinnamon Hills pushed forward by placing its request on the City Council's official agenda. On April 12, 1988, the City Council considered the application at a public meeting. Municipality residents again voiced their opposition to the Cinnamon Hills project (e.g., site not suitable for elderly housing because it was far from essential services, no adequate public transportation from complex to town, and site consisted of steep terrain, making it difficult for senior citizens to traverse). Cinnamon Hills rebutted these complaints with one argument—its proposal fell within the exception carved out by the Growth Control Ordinance and Resolution 638. Therefore, issuing a building permit was mandatory.

The City Council denied the requested permit. Mayor Jon C. Porter ("Mayor Porter") reasoned that the underlying purposes of the Growth Control Ordinance did not allow granting an exception to the allotment allocation process when there were plenty of allotments available. He suggested that Cinnamon Hills proceed with an application for allotments and abandon its attempt to obtain an exception to the Growth Control Ordinance. The municipality could then evaluate the concerns from its citizenry regarding the desirability of the Cinnamon Hills project.

Instead of accepting this advice, Cinnamon Hills filed a complaint against Boulder City in the Eighth Judicial District Court on May 9, 1988, listing three claims for relief. First, Cinnamon Hills requested a writ of mandamus instructing the City Council to issue a building permit. Second, Cinnamon Hills sought damages pursuant to NRS 278.0233, claiming that denial of the

[1]To qualify for Cinnamon Hills living, an elderly tenant would have to make less than $15,300 per year.

permit was "arbitrary and capricious."[2] Third, Cinnamon Hills asserted a 42 U.S.C. § 1983 (1988) (hereinafter "§ 1983") cause of action, alleging that denial of the permit infringed upon its equal protection and due process rights and amounted to a taking of property without just compensation.

On July 13, 1988, a hearing was held in district court regarding the writ of mandamus request. The sole evidence considered was the transcript of the City Council meeting on April 12, 1988, where the City Council officially denied the building permit. The district judge determined that the municipality's rationale behind the denial of the permit was not apparent. Therefore, he remanded the matter to the City Council.

The City Council responded by issuing a formal document on July 26, 1988. Therein, the City Council claimed that it retained discretion to accept or reject Cinnamon Hills' request for a permit, even in light of the Growth Control Ordinance exclusionary language and Resolution 638. Moreover, the City Council asserted that it had received other allotment requests and was aware of other potential requests totaling over 300 construction units. Due to this glut of proposed housing projects for the elderly and the threat to the overall purpose of the Growth Control Ordinance, the City Council denied Cinnamon Hills' permit application. Buttressing this reasoning, the City Council also cited "widespread criticism" of the project from its citizenry.

On September 14, 1988, a second writ of mandamus hearing was held in district court to examine this written response. Again, the trial judge was dissatisfied and remanded for clarification of what other applications were before the City Council when it rejected Cinnamon Hills' requested permit.

The City Council then submitted a written affidavit from Mayor Porter on September 19, 1988. Mayor Porter specifically stated that at the time Cinnamon Hills' building permit was

---

[2]NRS 278.0233 establishes a cause of action for the arbitrary and capricious denial of a building permit with the following pertinent language:

> 1.   Any person who has any right, title or interest in real property, and who has filed with the appropriate state or local agency an application for a permit which is required by statute or an ordinance, resolution or regulation . . . before that person may improve, convey or otherwise put that property to use, may bring an action against the agency to recover actual damages caused by:
>
> (a) Any final action, decision or order of the agency which imposes requirements, limitations or conditions upon the use of the property in excess of those authorized by ordinances, resolutions or regulations . . . in effect on the date the application was filed, and which:
>
> (1) Is arbitrary or capricious; or
> (2) Is unlawful or exceeds lawful authority. . . .

rejected, the City Council was aware of a 152-unit complex for the elderly being considered by Boulder City Hospital. Additionally, the City Council had already committed to issuing allotments and an exception to accommodate a 181-unit development for the elderly called the Villages. Based upon the Villages commitment, Boulder City Hospital's expected proposal, and Cinnamon Hills' refusal to comport with the normal allotment allocation process, Mayor Porter stated that the City Council decided to reject Cinnamon Hills' permit request. Mayor Porter claimed the decision was made in an effort to advance the purpose underlying the Growth Control Ordinance.

On October 6, 1988, a third hearing was held in district court. In light of Mayor Porter's affidavit, the district judge denied the writ of mandamus request. He reasoned that it was undisputed that at the time of denial, there were other proposed housing complexes for the elderly under consideration. In the face of these other proposals, Boulder City did not act arbitrarily and capriciously.

Cinnamon Hills appealed. On April 6, 1990, this court dismissed that appeal because the issue was moot. Cinnamon Hills had lost its option to purchase the development property. However, this court did order the matter reassigned to a different district judge for a trial on the merits to consider Cinnamon Hills' other remaining claims for relief.

After remand, the trial was bifurcated, and the parties stipulated to limit evidence at the liability trial to the documentation and transcripts already appearing in the record. Less than a week before trial, Boulder City tried to back out of this arrangement by moving for a continuance so that it could arrange for live witness testimony. Boulder City wanted to call individual City Council members to testify. The district court rejected the request.

On April 27, 1992, the liability issues were tried in district court. Essentially, the trial resembled a hearing with each counsel presenting arguments and referencing submitted documentation. The pertinent documentary evidence consisted of the following: (1) transcript of the Allotment Committee's hearing on February 29, 1988; (2) transcript of the City Council's meeting on April 12, 1988 (when the permit was officially denied); (3) transcripts of all three writ of mandamus hearings in district court (where no live witnesses testified); (4) a copy of the City Council's written reasons for denying the building permit; (5) a copy of Mayor Porter's affidavit, including supporting documents; and (6) the pleadings of the respective parties.

On this evidence alone, the district court found in favor of Cinnamon Hills on all its claims for relief. The court entered findings of fact and specifically concluded the following: (1)

having met all the requirements of Resolution 638, issuance of a building permit to Cinnamon Hills was mandatory; (2) Boulder City ignored the requirements of Resolution 638 and the Growth Control Ordinance and, therefore, arbitrarily and capriciously denied the building permit; (3) this arbitrary and capricious denial violated NRS 278.0233, entitling Cinnamon Hills to damages; (4) Boulder City unconstitutionally infringed upon Cinnamon Hills' due process property rights; (5) Boulder City infringed upon Cinnamon Hills' equal protection rights by discriminating against "low-income elderly"; (6) denial of the permit amounted to an unconstitutional Fifth Amendment taking without just compensation; and (7) Boulder City's unconstitutional actions violated 42 U.S.C. § 1983, entitling Cinnamon Hills to damages and attorney's fees.

After a separate trial on damages, the district judge awarded Cinnamon Hills over $500,000. This amount included approximately $138,000 in attorney's fees. The court found that Cinnamon Hills' successful § 1983 cause of action preempted any statutory cap on liability codified by NRS 41.035 (establishing $50,000 liability limit for a municipality's tortious conduct).

Boulder City appeals the district court's judgment and forwards several arguments. Of particular note, Boulder City argues that the district court erred by disallowing live witness testimony at the liability stage of trial. We agree with this contention. As a result, we reverse the district court's decision and remand for further proceedings.

Yet, as a related matter, we *sua sponte* dismiss Cinnamon Hills' § 1983 cause of action. Boulder City did not infringe upon Cinnamon Hills' constitutional rights.

## DISCUSSION

A. *Refusal to allow live witness testimony*

As indicated, a few days before the liability trial commenced, Boulder City petitioned the district court for a delay so that it could prepare live witness testimony. Boulder City was trying to back out of its prior agreement to rest upon a submitted paper record. The district court rejected the request, reasoning that the scope of review applied to an administrative proceeding was limited to transcript testimony. The court also found that the submitted record sufficiently addressed all issues surrounding Cinnamon Hills' respective claims for relief.

We conclude that the district court abused its discretion. By constricting the liability trial to a paper record, the court did not afford Boulder City an adequate opportunity to fend off charges that its conduct was arbitrary and capricious. Tighe v. Von

Goerken, 108 Nev. 440, 444, 833 P.2d 1135, 1137 (1992) (incomplete record did not evince arbitrary and capricious denial of a permit and, therefore, further proceedings were warranted). The proposed testimony from individual City Council members would have proved invaluable in defending against Cinnamon Hills' affirmative claims for relief. As a result of the district court's actions, we cannot conclude whether Boulder City arbitrarily and capriciously denied the subject building permit.

Contrary to Cinnamon Hills' contentions on appeal, resolution of this matter is not limited to reviewing the City Council hearing transcripts. Cinnamon Hills must remember that it filed suit against the municipality, the City Council, and individual City Council members, seeking more than $500,000 in damages. Certainly, Boulder City is not limited to a submitted paper record in fending off such complex affirmative claims for relief.

Accordingly, we remand to the district court for a complete trial on all the liability issues remaining after this appeal.

B. *Cinnamon Hills' constitutional claims*

Although only touched upon in the litigants' briefing papers, this court may examine constitutional issues on appeal that substantially impact the rights of the litigants. McCullough v. State, 99 Nev. 72, 74, 657 P.2d 1157, 1158 (1983). Exercising this prerogative, we find it inappropriate to allow this case to proceed at the trial court level encumbered by Cinnamon Hills' legally deficient, constitutionally based claims for relief.

In accordance with 42 U.S.C. § 1983 (1988), a litigant has a federal cause of action for damages when an official acting under the color of state law infringes upon a protected constitutional right. Moreover, a litigant may state a viable § 1983 claim if denied a building permit in violation of protected constitutional rights. Bateson v. Geisse, 857 F.2d 1300, 1303 (9th Cir. 1988); Scott v. Greenville County, 716 F.2d 1409, 1421 (4th Cir. 1983). Yet absent any constitutional infringement, a § 1983 claim fails.

In the instant case, we conclude that Boulder City did not violate any of Cinnamon Hills' constitutional rights. First, denial of a building permit was not an unconstitutional taking without just compensation in violation of the Fifth Amendment. Even assuming that Cinnamon Hills had exercised its option to purchase the development property, denial of a permit to build living quarters for the elderly did not destroy all viable economic value

of the prospective development property. Bello v. Walker, 840 F.2d 1124, 1131 (3rd Cir.) (denial of building permit does not destroy all economic use of property in violation of Takings Clause), *cert. denied*, 448 U.S. 851 (1988); *see also Scott*, 716 F.2d at 1421. Hence, there was no Fifth Amendment takings violation.

Second, Boulder City could not have violated Cinnamon Hills' substantive due process rights. The grant of a building permit was discretionary. Therefore, under the applicable land use laws, Cinnamon Hills did not have a vested entitlement to a constitutionally protected property interest.

This point is aptly illustrated by Gardner v. Baltimore Mayor & City Council, 969 F.2d 63 (4th Cir. 1992). In *Gardner,* a developer filed a § 1983 claim against the Baltimore City Council for allegedly infringing upon its substantive due process property rights by denying the developer a building permit. In upholding summary judgment in favor of the City Council, the Fourth Circuit Court of Appeals reasoned that the developer had to show an entitlement to the permit before any substantive due process interest was created. If the City Council had *any* discretion in granting or denying the permit, there could be no entitlement and no constitutionally protected interest. *Id.* at 69. The court opined that the constitution was not a tool for obtaining damages in matters of pure legislative and local concern—land use management:

> Several circuits have applied *Roth's* [Board of Regents v. Roth, 408 U.S. 564, 577 (1972)] "claim of entitlement" standard to substantive due process challenges to municipal land-use decisions. Under this approach, whether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval.
>
> . . . .
>
> [This] standard represents a sensitive recognition that decisions on matters of local concern should ordinarily be made by those whom local residents select to represent them in municipal government—not by federal courts. It also recognizes that the Fourteenth Amendment's Due Process Clause does not function as a general overseer of arbitrariness in state and local land-use decision.

*Id.* at 68-69 (emphasis in original); *see also* Mackenzie v. City of Rockledge, 920 F.2d 1558, 1559 (11th Cir. 1991).

As evidenced by *Gardner,* resolution of Cinnamon Hills' substantive due process claim is a matter of "statutory" interpretation. At issue is the exclusionary language of the Growth Control Ordinance and Resolution 638. After examining these two rules, it is clear that Boulder City retained discretion in granting a building permit to Cinnamon Hills. The language of the Growth Control Ordinance indicates that an allotment allocation exception for senior citizens housing must be "approved by the City." This evinces an intention to retain control over the municipality's senior citizens housing developments, even in light of any language carving out an exception to the allotment process. *See* Bd. of County Comm'rs v. CMC of Nevada, 99 Nev. 739, 744, 670 P.2d 102, 105 (1983) (court should read every sentence, word, and phrase of ordinance within context of the purpose of the legislation).

Additionally, this intention is not thwarted by any of the language contained in Resolution 638. Resolution 638 merely defines what is meant by an eligible housing project for the elderly. It cannot mean that any time a developer meets the criteria therein, it is automatically entitled to a building permit regardless of the size or desirability of the project. This conclusion would affront the entire purpose behind the Growth Control Ordinance and what Resolution 638 was meant to promote.[3]

Finally, aside from the foregoing ordinance interpretation analysis, Boulder City certainly thought that it had discretion to accept or reject Cinnamon Hills' permit application. Boulder City's interpretation of its own land use laws is cloaked with a presumption of validity and will not be disturbed absent a manifest abuse of discretion. McKenzie v. Shelly, 77 Nev. 237, 242, 362 P.2d 268, 270 (1961); *see also* State v. State Engineer, 104 Nev. 709, 713, 766 P.2d 263, 266 (1988) (administrative agency afforded great discretion in interpreting statute that it is charged with enforcing). We cannot conclude that Boulder City manifestly abused its discretion in interpreting the Growth Control Ordinance and Resolution 638. While the subject language is not a model of clarity, it would certainly accommodate the interpretation that Boulder City had the discretion to accept or reject Cinnamon Hills' permit request.

In light of our interpretation of these land use laws and Boulder City's broadly defined zoning powers, we conclude that the City

---

[3]The preamble to Resolution 638 states that "the City Council has received the recommendations of administrative staff and the controlled growth ordinance committee concerning the interpretation and intent of the Ordinance and methods in which said exemptions may be applied *without subverting the purpose of the Ordinance* . . . ." (Emphasis added.)

Council had discretion to accept or reject Cinnamon Hills' permit request. As a result, Cinnamon Hills did not have an entitlement protected by the Due Process Clause of the Constitution.

As a final point, we also conclude that Boulder City did not violate Cinnamon Hills' equal protection rights. With no suspect classification at issue, Cinnamon Hills faced a heavy burden to prove that Boulder City intentionally discriminated on the basis of class and its actions were not rationally related to any legitimate state interest. Village of Belle Terre v. Boraas, 416 U.S. 1, 7-8 (1973); *see also* Southern Pacific v. City of Los Angeles, 922 F.2d 498, 507 (9th Cir. 1990), *cert. denied,* 502 U.S. 943, 112 S. Ct. 382 (1991); Eide v. Sarasota County, 908 F.2d 716, 722 (11th Cir. 1990); Carpenter v. Tahoe Regional Planning Agency, 804 F.Supp. 1316, 1329 (D. Nev. 1992).

Cinnamon Hills failed in this task. We have searched the record on appeal and find no evidence establishing or even suggesting that Boulder City was motivated by intentional class-based discrimination. New Burnham Prairie Homes v. Village of Burnham, 910 F.2d 1474, 1481 (7th Cir. 1990) (simple disparate treatment from another developer does not present an equal protection claim). Moreover, even assuming that Boulder City was so motivated, its actions do not fail rational basis scrutiny. From the inception of the Cinnamon Hills project, there was opposition to the development from the municipality's citizenry. At the initial Allotment Committee meeting on February 29, 1988, and again at the City Council meeting on April 12, 1988, town residents complained that the development was not suited for a senior citizen community, located too far from essential services and not supported by public transportation. In addition, it is undisputed that when the City Council rejected Cinnamon Hills' building permit, it had already committed to a 181-unit development proposed by the Villages. Boulder City claimed that all these factors indicated the need to reject the permit in furtherance of the Growth Control Ordinance. *Mackenzie,* 920 F.2d at 1559-60 (denial of a permit in an effort to limit commercial development is sufficient rationale to defeat equal protection constitutional attack on zoning decision); *see also* Christian Gospel Church v. San Francisco, 896 F.2d 1221, 1226 (9th Cir.), *cert. denied,* 498 U.S. 999 (1990).

Cinnamon Hills responds to this analysis, claiming that the unconstitutional nature of Boulder City's action is evidenced by the different treatment afforded to the Villages development. There is evidence that the City Council was swayed by negotiations and pressuring from the Villages. In fact, this led to the City

Council reaching a compromise with that developer, issuing an allotment/exception combination so that the Villages could construct a 181-unit senior citizens living complex. Cinnamon Hills also alleges that Boulder City's claim that it was considering several other proposed housing projects for the elderly was contrived after two different orders of remand from the district court.

Cinnamon Hills' contentions are unpersuasive. Any conflict of evidence or allegations of contrived rationale are irrelevant to this court when considering the constitutional implications of Boulder City's actions. It is well-settled under rational basis scrutiny that the reviewing court may hypothesize the legislative purpose behind legislative action. United States Railroad Retirement Board v. Fritz, 449 U.S. 166, 179 (1980); *see also* Brandwein v. California Bd. of Osteopathic Ex'rs, 708 F.2d 1466, 1470-71 (9th Cir. 1983). Additionally, simply admitting that facts supporting the governmental action are arguable or in dispute is enough to constitutionally justify the state action. Vance v. Bradley, 440 U.S. 93, 111 (1979).

The record indicates that Boulder City rejected Cinnamon Hills' permit request due to citizen opposition and a glut of proposed development projects for the elderly. The fact that the Villages development was approved by the City Council, and the Cinnamon Hills development was not, does not support a § 1983 equal protection cause of action. The United States Constitution simply does not forbid democratic government to succumb to individual and public pressures in reaching land use decisions that work to the detriment of an individual litigant. Greenbriar, LTD. v. City of Alabaster, 881 F.2d 1570, 1579 (11th Cir. 1989) (upholding permit denial decision under substantive due process attack).

Based upon the foregoing, we conclude that Boulder City did not violate any rights afforded Cinnamon Hills by the Equal Protection Clause of the Constitution.[4]

## CONCLUSION

Having determined that Boulder City's conduct could not have

---

[4]Our conclusion that Boulder City's actions did not offend rational basis scrutiny in no way impacts the standard of judicial review with respect to Cinnamon Hills' remaining state law causes of action. Whether Boulder City acted arbitrarily and capriciously under NRS 278.0233 is a different question from whether the municipality's actions violated the Equal Protection Clause of the Constitution. *See, e.g., Tighe,* 108 Nev. at 442, 833 P.2d at 1137 (city council's permit decisions will not be disturbed unless arbitrary, capricious, or a manifest abuse of discretion); Henderson v. Henderson Auto, 77 Nev. 118, 122, 359 P.2d 743, 745 (1961). Certainly, equal protection rational basis examination of Boulder City's actions is a more stringent and deferential standard than that required under NRS 278.0233.

violated any of Cinnamon Hills' constitutional rights, we dismiss Cinnamon Hills' § 1983 cause of action.[5] However, as indicated, the district court erred by not examining Cinnamon Hills' state-based claims for relief in a complete trial on liability. Therefore, we reverse the district court's decision and remand for a new trial and examination of the issues remaining in dispute after this appeal. In fairness to the district court judge and the litigants, we order this matter assigned to a different district court judge upon remand.

In light of our conclusions in this opinion, it is not necessary to address Boulder City's other contentions of error.

---

[5]This conclusion obviously impacts any future Cinnamon Hills damages award. As noted, the trial court ruled that a substantiated federal § 1983 claim preempted Nevada's limit on tort liability extended to Boulder City under NRS 41.035. Owen v. City of Independence, 445 U.S. 622, 647-48 (1980) (considering a municipality's non-discretionary constitutional violations, the Court determined that §1983 liability overcame protection of state sovereign immunity). However, absent the preemptive force of this federal claim, the $50,000 limitation on tort liability constricts Cinnamon Hills' potential recovery.