THE CONSOLIDATED MUNICIPALITY OF CARSON CITY, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA; AND THE CARSON CITY BOARD OF SUPERVISORS LIQUOR AND ENTERTAINMENT BOARD, APPELLANTS, v. EUGENE L. LEPIRE, RESPONDENT.

No. 26809

April 12, 1996

914 P.2d 631

*Noel Waters,* District Attorney, *Mark Forsberg,* Deputy District Attorney, Carson City, for Appellants.

*Heaton & Doescher,* Carson City, for Respondent.

## OPINION

*Per Curiam:*

Respondent Eugene J. Lepire (Lepire) applied for a liquor license for a laundromat he owned and operated in Carson City. The application was denied by the Carson City Liquor Board (Board). Three years later, Lepire again applied for a liquor license, this time asserting that it was for a "restaurant-laundry." He argued that because the laundromat had a microwave oven, two tables and eight chairs, the facility qualified as a dining room. His application was again denied. Lepire then filed a petition with the district court for a writ of mandamus. At the hearing on the writ, Lepire offered eleven exhibits, including four depositions which were not before the Board when it considered his application. The district court, after taking judicial notice of "hard core consumption of alcohol" at the facility next door to the laundromat, ordered the Board to grant Lepire's liquor license. The Board appeals, arguing that the district court erred (1) by considering evidence beyond that which was before the Board; (2) by finding, as a matter of law, that the liquor control ordinance should be construed against the Board; and (3) by finding that the Board's decision was an abuse of discretion.

The Board first argues that it was improper for the district court to consider evidence which was not part of the record before the Board when the Board made its decision. A total of six exhibits that were not before the Board when it denied Lepire's application were admitted into evidence by the district court. Those exhibits included four depositions, a printout of all liquor licenses in Carson City, and a letter from Carson City Treasurer Ted Thornton.

"This court's role in reviewing an administrative decision is identical to that of the district court: *to review the evidence presented to the agency* in order to determine whether the agency's decision was arbitrary or capricious and was thus an abuse of

the agency's discretion." Jourdan v. SIIS, 109 Nev. 497, 499, 853 P.2d 99, 101 (1993) (citations omitted) (emphasis added).

Moreover, NRS 233B.135 provides that the "[j]udicial review of a final decision of an agency must be . . . [c]onfined to the record." NRS 233B.131(2) requires that before a court may consider evidence beyond what was presented to the agency, there must be a showing that the "additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency." The court "may then order that the additional evidence . . . be taken before the agency." *Id.* None of these procedures were followed in this case, and it was error for the district court to admit the additional evidence.

Second, the Board takes issue with the district court's finding that: "[t]he Carson City Ordinances defining dining room and restaurant[1] are vague and should be construed against the Board and in favor of [Lepire]." Because Lepire is attempting to get a "dining room with liquor" license, he is mainly concerned with the definition of "dining room," which appears in the section of the Code that pertains to liquor licenses. Under CCMC § 4.13.010(9), " '[d]ining room' means a place which is regularly and in a bona fide manner used and kept open for the serving of meals to guests for compensation, which has suitable kitchen facilities connected therewith complying with all regulations of the departments of health of the city and state."

This court has previously held that statutes relating to the sale of liquor are analogous to statutes regulating gaming. West Indies v. First National Bank, 67 Nev. 13, 214 P.2d 144 (1950). In *West Indies,* this court considered judicial construction of a gaming statute, and stated that,

> [c]onsidering the limitations placed by law upon the license, the special class of industry licensed and its deleterious effect, the fact that it is in contravention of the common law, the fact that it is a statute granting special privileges, we

---

[1]At the time of the proceedings below, the Code contained no definition of "restaurant." The Code has since been amended, and "restaurant" is now defined as

> a business establishment whose principal business is the preparing and selling of meals of unpackaged food to the customer in a ready-to-consume state in nondisposable containers, and where the customer consumes these meals while seated at a table within the restaurant building. Alcoholic beverages may be served accessory to food service in a restaurant.

CCMC § 18.03.495.

entertain no doubt but that the statute is one meriting strict construction against the licensee . . .

67 Nev. at 34, 214 P.2d at 154. We conclude that it was error for the district court to find, as a matter of law, that the ordinances pertaining to liquor licenses "should be construed against the Board and in favor of [Lepire]."

Lepire argues that if a statute has doubtful meaning, then a court must construe the statute in a manner which is least likely to "produce mischief." In support of this proposition, Lepire cites Arnold v. Stevenson, 2 Nev. 234, 244 (1866). While it is true that *Arnold* stands for the proposition that a court must adopt that construction which will be the least likely to produce mischief, Lepire has failed to show how the construction of the ordinance by the Board will produce mischief. The Board found that Lepire's facility, consisting of fifty-four washing machines and a microwave oven, was not "a place which is regularly and in a bona fide manner used and kept open for the serving of meals to guests." *See* CCMC § 4.13.010(9). We conclude that more mischief would result from the construction propounded by Lepire, which would categorize any facility with a microwave oven as a "dining room," which could then qualify for a liquor license allowing on-site consumption. This would include virtually every convenience market currently in operation.

Lepire's facility would not qualify as a "dining room" even if the ordinance were given a liberal construction, because the ordinance requires that the facility be in compliance "with all regulations of the departments of health of the city and state." CCMC 4.13.010(9). At the time he filed his petition for a writ of mandamus, Lepire had never had a permit to serve food, as required by the Carson City Health Department, but had been serving food without a permit. His facility was therefore not in compliance with the regulations of the health department and so could not qualify as a "dining room."

Finally, the Board argues that the district court erred in finding that the denial of Lepire's liquor license was an abuse of discretion. This court has held that "the essence of the abuse of discretion, of the arbitrariness and capriciousness of governmental action in denying a license application, is most often found in an apparent absence of any grounds or reasons for the decision." City Council v. Irvine, 102 Nev. 277, 280, 721 P.2d 371, 372-73 (1986).

At the hearing on September 15, 1994, two people testified and indicated that they were in favor of the proposed liquor license. One of those testifying was an employee of Lepire's. Three

people testified against the license, and the Board was told of a petition against the license which contained more than sixty-five signatures. The Board was further informed that all 150 members of the Carson Park Condo Homeowners Association were opposed to the license. The Board voted to deny the application, based on its findings that the facility was not a bona fide dining room and that granting the license would tend to create a public nuisance.

Counsel for the Board conceded at the district court hearing that "there isn't evidence in the record of this hearing to demonstrate that there is any possibility of a public nuisance being created." However, he went on to point out that during the long procedural history of the application, the Board had "developed an understanding or a knowledge of the location in the neighborhood and what the neighbors think and so forth. . . . [The Board] also ha[s] much more knowledge of the situation and the complaints of the neighbors and so forth."

This court has held that public opposition to a proposal is sufficient ground for denial. "The United States Constitution simply does not forbid democratic government to succumb to individual and public pressures in reaching land use decisions that work to the detriment of an individual litigant." Boulder City v. Cinnamon Hills Assocs., 110 Nev. 238, 249, 871 P.2d 320, 327 (1994) (citing Greenbriar, LTD. v. City of Alabaster, 881 F.2d 1570, 1579 (11th Cir. 1989)). This holding is very similar to the holding in Tighe v. Von Goerken, 108 Nev. 440, 833 P.2d 1135 (1992).

In *Tighe,* the respondent applied for a liquor license for a bar surrounded by single and multiple family residences. The city council of Las Vegas held a hearing at which no members of the public expressed any opinion on the proposal. One council member pointed out that the neighborhood in which the tavern was to be located was primarily residential, although the exact premises of the proposed tavern were zoned commercial. The city council voted to deny the application. This court held that

> [m]embers of the Council were elected by their constituents . . . to represent them in protecting and promoting the public good. In this instance, the Council exercised the equivalent of judicial notice in recognizing the actual environment surrounding the proposed tavern site. The Council thereafter exercised its discretion on behalf of the City's best interests, as the members of the Council unanimously perceived them to be. Under these circumstances, we are unable to conclude, despite the abbreviated proceedings and testimony, that the Council abused its discretion.

108 Nev. at 443, 833 P.2d at 1137. The case presented here is nearly identical to *Tighe,* except that in this case, there was actual evidence of public opposition to the proposed license, whereas in *Tighe,* the council merely presumed that the license was contrary to the public interest. The evidence supporting the Board's decision is therefore even more substantial in this case than it was in *Tighe.*

Based on the public opposition to the license and the Board's finding that the facility did not qualify as a bona fide dining room, we conclude that there is sufficient evidence to support the Board's decision, so there was no abuse of discretion. Additionally, we conclude that the district court erred by admitting evidence which was not before the Board and also that the district court erred by finding that the liquor ordinance should be construed against the Board. We therefore order the writ of mandamus vacated.

STEFFEN, C. J., SHEARING and ROSE, JJ., and ZENOFF, Sr. J., concur.[2]

SPRINGER, J., dissenting:

I dissent.

I agree with the trial court. I believe that the trial judge has a much better grasp of the facts of this case than does this appellate tribunal. The trial judge saw the denial of a license as being arbitrary and discriminatory. I do not think that we can sensibly quarrel with this conclusion. I would deny extraordinary relief and let the trial court's judgment stand.

[2]THE HONORABLE THOMAS L. STEFFEN, Chief Justice, appointed THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in the place of THE HONORABLE CLIFF YOUNG, Justice. Nev. Const. art. 6, § 19; SCR 10. SENIOR JUSTICE ZENOFF will participate on the tapes and briefs.