Charles O. BROWN, O.D., Appellant,

v.

**STATE BOARD OF EXAMINERS IN OPTOMETRY, Respondent.**

No. 12007.

Supreme Court of South Dakota.

Argued Feb. 14, 1977.

Decided March 2, 1978.

George A. Bangs and Joseph Butler, of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for appellant.

Alan L. Austin and Douglas Austin, of Austin, Hinderaker & Hackett, Watertown, for respondent.

PORTER, Justice.

## CASE SUMMARY

In proceedings under the Administrative Procedure Act, SDCL 1–26, the State Board of Examiners in Optometry revoked the license of Charles O. Brown, O.D., to practice optometry in this state. The circuit court affirmed. We overrule appellant Brown's contentions on appeal (1) that he was deprived of due process of law because the Board was not constitutionally qualified to hear his case, and (2) that he substantially complied with SDCL 36–7–20.1 which requires optometrists licensed in South Dakota to take annual courses of study relating to the practice of their profession. Reviewing the judgment of the circuit court under SDCL 1–26–37, we affirm.

## FACTS

Appellant, Brown, was admitted to practice optometry in South Dakota in 1948. He practiced in Rapid City and Sturgis through November, 1971, and then moved to Canada. He remained in Canada until sometime in 1975 when he returned to South Dakota. He practiced his profession in Canada in 1972 and 1973, but in 1974 practiced only the first two months of that year. He practiced in Canada from two to four months in the first half of 1975, but did not practice his profession anywhere the last half of 1975. Brown testified he had no communication with the Board from the time he left South Dakota in 1971 until his return in 1975. He did not pay the annual South Dakota registration fee which became due October 1 of 1972, 1973, 1974, and 1975. December 18, 1975, Brown, through counsel, tendered the delinquent registration fees to the Board. On December 30, 1975, the Board, pursuant to SDCL 1–26–29, gave Brown written notice that it would on January 10, 1976, meet to consider whether to cancel, annul or suspend his license to practice optometry in South Dakota for his failure to pay the annual license fee and for his failure to furnish proof of compliance with the continuing education requirements of SDCL 36–7–20.[1] On January 10, 1976, Brown appeared with counsel at the Board meeting held pursuant to SDCL 1–26–29. By written notice dated January 20, 1976, the Board notified Brown of its determination to hold a hearing under SDCL 1–26 on February 7, 1976, to determine whether his license to practice should be revoked. Following the February 7, 1976 hearing, the Board concluded that Brown did not meet the continuing education requirements of South Dakota law, and ordered that his license be revoked without prejudice to his right to again take the examination for admission to practice. On Brown's appeal, the circuit court affirmed the decision of the Board, holding that the Board was qualified to hear the charges against Brown and that the Board's decision was supported by substantial evidence. Brown appeals from the judgment of the circuit court.

## ISSUES

There are essentially two issues before us on appeal:

*Issue One*: Was Brown deprived of due process of law because the Board was not constitutionally qualified to hear the charges against him?

*Issue Two*: Was Brown in substantial compliance with the substantive requirements of SDCL 36–7–20 and related rules with respect to continuing professional education?

## DECISION

### ISSUE ONE

We conclude that the circuit court correctly held that the Board was not constitutionally disqualified to hear and determine the charges against Brown.

---

1. SDCL 36–7–20 provides:

   Each licensed optometrist residing in or in active practice within the state of South Dakota shall, on or before September first of each year, certify on forms provided by the board that he has complied with §§ 36–7–20.1 and 36–7–20.2. This provision shall not apply to any licensee serving in the armed forces of the United States during any part of the twelve months immediately preceding the annual license renewal date nor to any licensee submitting proof that he was suffering from a serious or disabling illness or physical disability which prevented his attendance at any qualified educational program within the state of South Dakota during the twelve months immediately preceding any annual license renewal date nor to any licensee first licensed within the twelve months immediately preceding the renewal date. On or before the first day of October in each year, every registered optometrist after complying with the provisions of this section as to certifying as to his participation in a continuing education program, if applicable to him, shall pay to the state board a fee of one hundred dollars, in default of which the board may, in compliance with chapter 1–26, revoke his license or certificate, either for failure to comply with the continuing education requirements or nonpayment of such fee, but the payment of such fee at or before the time of hearing, with such additional sum not exceeding fifty dollars, as may be fixed by the board, shall excuse the default.

This issue arises out of the allegation by Brown that the hearing officer had a pecuniary interest in the outcome of the proceedings, because both individuals now practice optometry in Mitchell, South Dakota. When the hearing was held on February 7, 1976, Brown was living in Rapid City. On March 5, 1976, Dr. Krall, the hearing examiner before whom the February 7, 1976 hearing was held, entered, pursuant to SDCL 1–26–24, his proposed findings of fact, conclusions of law, decision and order revoking Brown's license to practice optometry. The Board was not notified of Brown's move to Mitchell until whatever time it received his letter, dated March 19, 1976. The findings of fact, conclusions of law, and order of the Board entered March 20, 1976, were essentially the same as those proposed by Dr. Krall on March 5, 1976, which was two weeks before the Board was notified of Brown's practice in Mitchell. It is not established in the record that the Board had received notice of Brown's move by March 20, 1976, when it issued the order revoking his license. If Brown's argument is accepted, in effect he was able to work a disqualification of the Board by his own voluntary act of moving to Mitchell, at a time subsequent to the February 7 hearing and at a time subsequent to the entry of Dr. Krall's findings and decision on March 5. At the February 7 hearing Brown made no objection to Dr. Krall's participation nor did Brown object in the proposed findings and exceptions to Dr. Krall's findings transmitted to the Board on March 15, 1976.

As this court noted in *Mordhorst v. Egert*, 88 S.D. 527, 223 N.W.2d 501 (1974):

"It is one of the mainstays of our system of laws that a state cannot affect a person's personal or property rights except after a hearing before a fair and impartial tribunal. * * * A fair and impartial tribunal requires at least that the trier of fact be disinterested * * * and that he also be free from any form of bias or predisposition regarding the outcome of the case * * *. Not only must the procedures be fair, 'the very appearance of complete fairness' must also be present. * * * These principles apply not only to trials, but equally, if not more so, to administrative proceedings. (citations omitted)" *Id.* at 534, 223 N.W.2d at 505.

It is sufficiently clear that those with substantial pecuniary interest in proceedings of this nature should not adjudicate the disputes. The key word in the last sentence is "substantial." *Apoian v. State*, S.D., 235 N.W.2d 641, 644 (1975).

In the present case there is no evidence of bias or prejudice on the part of the Board. Although Brown and Dr. Krall practiced in the same town at a time subsequent to the hearing, there is no evidence that Dr. Krall had any pecuniary interest, much less a substantial one, in the outcome of the proceedings at the time the hearing was conducted and his proposed findings of fact, conclusions of law, decision and order were entered. Membership in or connection with the same profession or occupation as that of an accused licensee alone generally does not indicate a disqualifying bias or interest on the part of the hearing examiner sufficient to violate due process. *Kachian v. Optometry Examining Board*, 44 Wis.2d 1, 10, 170 N.W.2d 743, 748 (1969).

If the indirect interest deriving from membership in the profession or occupation being regulated disqualifies an individual from serving on a regulatory board, the result would be dentists could not examine dentists, attorneys could not serve on bar examiner boards, pharmacists could not give pharmacy examinations. Would it be preferable, or even workable, to have the dentists giving bar examinations and optometrists giving pharmacy tests? The gain in presumed purity would be matched by a loss in knowledge and experience in drafting and administering professional and occupational rules and regulations. *Id.* at 12, 170 N.W.2d at 748.

Nothing in the record indicates that Brown's later move to Mitchell had any effect upon the Board's decision, and we find no substantial pecuniary interest involved in this case. We thus conclude that

the Board hearing did not violate Brown's constitutional due process rights.

## ISSUE TWO

■ We hold that Brown did not substantially comply with the substantive requirements of SDCL 36–7–20 and related rules with respect to continuing education.

Initially the Board considered revocation of Brown's license for failure to pay the annual license fee and for failure to furnish proof of compliance with the continuing education requirements. In its findings of fact the Board recognized Brown's tender of payment for the license registration fee of $100.00 for each of the years 1972, 1973, 1974, and 1975, and $20.00 to apply to the penalty that might be assessed by the Board for late payment. The Board concluded that if at any time it should be determined that Brown should be reinstated, the maximum statutory penalty of $50.00 for each year should be applied. The issue of compliance with SDCL 36–7–20 before us on appeal, therefore, deals only with Brown's failure to meet the continuing education requirements of the law and the regulations.

SDCL 36–7–20.1 [2] requires all registered optometrists to take annual courses of study in subjects relating to the practice of optometry, and SDCL 36–7–20.2 establishes attendance requirements for the courses as follows:

> The length of study required by § 36–7–20.1 shall be prescribed by the board but shall not exceed fifteen hours in any calendar year. Attendance must be at a course or courses approved by the board. Attendance at any course or courses of study are to be certified by the board upon a form provided by the board and shall be submitted by each registered optometrist at the time he makes applica-

tion to the board for the renewal of his license and payment of his renewal fee. In no instance may the board require a greater number of hours of study than are available at approved courses held within the state and shall be allowed to waive this requirement in case of certified illness or undue hardship.

While practicing optometry in the Province of Alberta, Canada, Brown was a member of the Alberta Optometric Association, which had bylaws requiring continuing education similar to the South Dakota requirements. At the hearing on February 7, 1976, Brown testified that during his absence from South Dakota he attended the following continuing education programs:

| January, 1973 | 8½ hours | Alberta Optometric Association |
| March, 1973 | 18 hours | Southwest Contact Lens Congress |
| July, 1973 | 12 hours | Canadian Association of Optometrists |
| December, 1973 | 23 hours | American Academy of Optometry |
| January, 1975 | 12 hours | Alberta Optometric Association |
| January-February, 1976 | 12 hours | North Central States Optometric Congress |

The South Dakota law requiring continuing education did not become effective until July 1, 1973, and the hourly requirements of SDCL 36–7–20 did not become operational until October 1, 1973. Therefore, the 38½ hours of continuing education completed prior to October 1, 1973, are irrelevant to the relicensing process. The 12 hours completed after September 30, 1975, are also irrelevant to this appeal because Brown's license revocation was ordered for failure to meet the 1974 (October 1, 1973 to September 30, 1974) and 1975 (October 1, 1974 to September 30, 1975) hourly requirements. The hourly requirements for 1974 and 1975 were six hours and eight hours, respectively.[3] The validity of the statutory require-

2. SDCL 36–7–20.1 provides:

   All registered optometrists whenever licensed in the state of South Dakota are and shall be required to take annual courses of study in subjects relating to the practice of the profession of optometry to the end that the utilization and application of new techniques, scientific and clinical advances, and

the achievements of research will assure expansive and comprehensive care to the public.

3. ARSD 20:50:08:01 provides:

   To be eligible for the license renewal on October 1, 1974 each optometrist shall complete six hours of continuing education as defined in SDCL 36–7–20.1. For renewal of licenses

ments and their application to Brown is not questioned on this appeal.

Brown argues that his attendance at the American Academy of Optometry in December, 1973, and the Alberta Optometric Association in January, 1975, constituted substantial compliance with the requirements of SDCL 36–7–20 and related rules. We disagree with his contention. ARSD 20:50:08:02 provides a list of acceptable courses of study, which optometrists may take to meet the continuing education requirements in lieu of taking courses provided within the state. The American Academy of Optometry is included in that list, but the Alberta Optometric Association is not. However, the rule does provide that unlisted meetings and seminars within or without the state may be approved in advance by the Board if a request for such approval is made at least fifteen days prior to the meeting or seminar. Although 23 hours of approved subjects relating to the profession in December, 1973, would have satisfied the continuing education requirements for 1974, Brown furnished no certification of his participation in any such courses at the American Academy meeting as required by SDCL 36–7–20.[4] SDCL 36–7–20.2 specifically provides in part:

> Attendance at any course or courses of study are to be certified by the board upon a form provided by the board and shall be submitted by each registered optometrist at the time he makes application to the board for the renewal of his license and payment of his renewal fee.

Brown furnished no such certification for either the American Academy of Optometry meeting or the Alberta Optometric Association. Additionally, he made no request for approval of attendance at the Alberta Opto-

metric Association for continuing education credit, which meeting was not one of those listed in ARSD 20:50:08:02 as acceptable courses of study. At the hearing on February 7, 1976, Brown admitted that he made no request for approval of the Alberta Optometric Association and that he furnished no certification of attendance at either meeting. Conceding that the Canadian province where he practiced also had continuing education requirements, he nonetheless sought to excuse his statutory noncompliance by asserting that he was unfamiliar with the similar South Dakota requirement. Under the total circumstances here we are unable to say that the Board should have accepted this explanation as a valid excuse for Brown's failure to conform to an affirmative duty which the legislature has seen fit to write as a positive requirement of the statutes relating to the practice of optometry. As the circuit court noted in its decision, "the purpose of legislation dealing with optometry is, '*to protect the public against practice by unqualified persons* . . . ,' [footnote omitted] *Kachian v. Optometry Examining Board*, 44 Wis.2d 1, 170 N.W.2d 743, 745 (1969) (emphasis supplied), and not to harass individual doctors who through oversight or otherwise fail to meet the statutory requirements for continuing education." The requirement of independent corroboration of attendance at continuing education courses is reasonable to show statutory compliance. The legislature did not mean to require the Board to police all optometrists in the state to verify their attendance at acceptable continuing education courses. The optometrist has the duty, as prescribed by statute, to furnish the Board with proof.[5] The requirements are statutory and Brown gives us no basis upon

thereafter until otherwise changed, each optometrist shall complete eight hours per year of continuing education. Approved courses shall be made available by the board up to the number of hours required in each year.

4. The meeting was held in San Francisco in the Fairmont Hotel. Presence alone at the meeting site can hardly be viewed as showing "substantial compliance" with SDCL 36–7–20.

5. Although there are many available forms of corroboration concerning attendance at approved continuing education courses, Brown offered no persuasive evidence at the time of the hearing to support his assertion that he substantially complied with the statutory requirements. We view the whole record as factually insufficient to present a case of "substantial compliance" with the continuing education requirement imposed by statute upon each optometrist licensed in this state.

which we may refuse enforcement of the statute. We conclude, therefore, that the Board's decision that Brown did not meet the continuing education requirements of South Dakota law was supported by substantial evidence.

Brown argues that the revocation of a professional license is a matter of the gravest import to the individual affected. We agree that this license revocation is a step which the Board should not undertake lightly, but we find it to be a power expressly granted the Board in enforcing the statutory requirement for continuing education. SDCL 36–7–20.

We conclude that the circuit court correctly held that the Board was not disqualified to hear the charges against Brown and that the Board's decision was supported by substantial evidence. The judgment of the circuit court, affirming the order of the Board, is affirmed.

All the Justices concur.