2002 SD 139

In the Matter of the ALCOHOL BEV-
ERAGE LICENSE SUSPENSION OF
CORK 'N BOTTLE, INC., d/b/a Cork
'N Bottle, Yankton, SD, License No's
PL–4964 and RB–2697.

No. 22280.

Supreme Court of South Dakota.

Argued Oct. 7, 2002.

Decided Nov. 20, 2002.

Erich K. Johnke of James & Associates, Inc. Yankton, South Dakota, Attorney for appellant Cork 'n Bottle.

Jack C. Magee, Assistant Attorney General Department of Revenue Pierre, South Dakota, Attorney for appellees Department of Revenue.

ZINTER, Justice.

[¶ 1.] The Cork 'n Bottle Inc. (CNB), a Yankton convenience store, sold alcohol to an underage purchaser, and its alcohol licenses were suspended by the Department of Revenue (Department). The circuit court affirmed the suspensions. CNB appeals arguing that it substantially complied with a "safe harbor" statute that precludes license suspension if the licensee utilized five precautionary measures to prevent underage alcohol sales. One of these precautionary measures required that the employee who sold the alcohol must have attended a "Department approved" training program. Because the licensee did not send the employee to "Department approved" training, we affirm the suspensions.

## FACTS

[¶ 2.] Eugene Jensen owns the CNB. CNB holds a package liquor license and a retail beer license. As a part of this business, Jensen developed training and incentive programs that he designed to help prevent underage alcohol sales.

[¶ 3.] Under Jensen's training and incentive programs, new employees were advised about the legal consequences of selling alcohol to underage purchasers. Jensen also attended a Tobacco Alcohol Management course, and he reviewed the course materials with each new employee. Additionally, employees were taught how to detect false identifications; employees were offered a $300 "bounty" for confiscation of the driver's license of an underage person attempting to purchase alcohol; and, employees were required to sign an "Employee Liquor Liability Employment Agreement." In the agreement, each employee indicated that they understood, and would follow, all laws regarding the sale of alcoholic beverages. Finally, some, but apparently not all employees attended a "Department approved" Tobacco Alcohol Management course that provided instruction on techniques to prevent underage sales of alcohol.

[¶ 4.] The events that precipitated this controversy began in November of 2000. At that time, CNB was notified by the Yankton County State's Attorney that he would initiate a "sting" to ensure compliance with the laws prohibiting underage alcohol sales. This sting notice advised licensees that an undercover, underage person would attempt to illegally purchase alcoholic beverages from licensees in Yankton County. Jensen placed this "sting warning" in a location plainly visible to all employees. He also posted his notice of the "$300 cash [bounty] to whomever keeps the ID card."

[¶ 5.] On December 8, 2000, Bonnie Dougherty's fourth day of employment, she sold a six-pack of beer to an undercover, underage purchaser. Dougherty sold the beer even though she asked for the purchaser's identification. Dougherty testified that she had a "mental lapse" and mistakenly checked the purchaser's birth

date against the age required to purchase tobacco (age 18) rather than the age required to purchase alcohol (age 21).

[¶ 6.] Because of the illegal sale, the Department suspended CNB's alcohol beverage licenses for two weeks pursuant to SDCL 35–2–10.[1] CNB appealed the Department's decision to circuit court. In that appeal, CNB argued that it had substantially complied with a statute that provides a safe harbor for those licensees who take certain precautionary measures to prevent underage alcohol sales. The circuit court affirmed the Department's suspension.

[¶ 7.] The sole issue on appeal is:

**Whether CNB substantially complied with the "Department approved" employee-training requirement of the safe harbor statute.**

## STANDARD OF REVIEW

[¶ 8.] The facts in this case are not in dispute. The issue before us is a question of law. We review questions of law under the de novo standard. *Paint Brush Corp. v. Neu,* 1999 SD 120, ¶ 15, 599 N.W.2d 384, 389. Furthermore, liquor-licensing statutes are strictly construed

against the licensee. *Consolidated Municipality of Carson City v. Lepire,* 112 Nev. 363, 914 P.2d 631, 633 (Nev.1996) (quoting *West Indies v. First National Bank,* 67 Nev. 13, 214 P.2d 144, 154 (Nev.1950)). As we noted in *State v. Hy Vee Food Stores, Inc.,* 533 N.W.2d 147, 150 (S.D.1995), "[t]he serious problems associated with youth who abuse alcohol justify *stringent enforcement* against those who dispense it." (emphasis added).

## DECISION

[¶ 9.] The Secretary of Revenue is charged with administering the state's alcoholic beverage laws. SDCL 35–1–2. Under those laws, the Secretary is authorized to revoke or suspend the license of any business that violates the prohibition against sales to underage purchasers. SDCL 35–2–10 and 35–2–21. Moreover, before those statutes were amended in 2000, the Secretary could suspend an alcohol beverage license without giving any consideration to the licensee's efforts to prevent illegal sales or its previous record of underage sales. *Id.*

[¶ 10.] However, in 2000, the Legislature enacted SDCL 35–2–10.1.[2] That stat-

---

1. SDCL 35–2–10 provides: Any license issued under this title may, in compliance with chapter 1–26, be revoked or suspended by the secretary upon proof of violation by the licensee, his agents or employees or by the manager or contractual operators of retail establishments and their agents or employees operating under a county or municipal license, of any provision of this title, or any rule or regulation adopted by the secretary as provided in this title, or violation of ordinance or regulation of the political subdivision issuing the license relevant of alcoholic beverage control. For licensees with multiple alcoholic beverage licenses for the same premises, upon suspension or revocation of any license pursuant to this chapter, such licensee shall cease operation under all alcoholic beverage licenses held by such licensee

for the same premises for the same period as the suspension or revocation.

2. SDCL 35–2–10.1 provides: No retail license may be revoked or suspended because of a violation of any statute, ordinance, rule, or regulation prohibiting the sale or service of any alcoholic beverage to a person under the age of twenty-one years if the violation was committed by an employee or agent of the licensee and:

(1) The licensee did not see the violation occur;

(2) *The employee* or agent *has been certified by* a nationally recognized *training program approved by the Department* of Revenue that provides instruction on techniques to prevent persons under the age of twenty-one years from purchasing or consuming alcoholic beverages;

ute provided licensees with a safe harbor from license suspension if the violation was committed by an employee or agent of the licensee and five requirements were satisfied. The second requirement (SDCL 35–2–10.1(2)) provides that the employee who made the illegal sale must have been certified by a nationally recognized "training program approved by the Department."

[¶ 11.] This appeal arose because Dougherty did not attend a training program that was approved by the Department. Although there is no dispute about this fact, CNB argues that its own program ensured that its employees understood the law regarding underage alcohol sales. CNB also argues that its program provided sufficient instruction on techniques to prevent underage persons from purchasing or consuming alcoholic beverages. Consequently, CNB contends that, even though it did not strictly comply with SDCL 35–2–10.1(2), CNB is entitled to safe harbor because it substantially complied by providing its own equivalent training measures.

[¶ 12.] We recently addressed the doctrine of substantial compliance. We held that substantial compliance is not established unless the statute has been actually followed sufficiently to carry out the substance essential to every reasonable objective of the statute. In making that determination, we noted that consideration should be given to the intent and purpose of the statute.

Substantial compliance with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute. It means that a court should determine whether the statute had been followed sufficiently so as to carry out the intent for which it was adopted. Substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.

*Wagner v. Truesdell,* 1998 SD 9, ¶ 7, 574 N.W.2d 627, 629 (quoting *State v. Bunnell,* 324 N.W.2d 418, 420 (S.D.1982)). *See also Peterson v. Hohm,* 2000 SD 27, ¶ 12, 607 N.W.2d 8, 11–12.

[¶ 13.] The general objective of "South Dakota alcoholic beverage laws manifest an unwavering public interest in prohibiting liquor sales to persons under twenty-one." *Hy Vee Food Stores,* 533 N.W.2d at 150. However, substantial compliance also requires actual compliance in respect to the *substance essential to every reasonable objective of the statute.* Therefore, we must also consider the more specific objective of SDCL 35–2–10.1, which is intended to provide a safe harbor from license suspension if the licensee satisfies the five requirements of the statute. Significantly, those five requirements are listed in the conjunctive. Consequently,

(3) The licensee has a written policy requiring the licensee's employees or agents to examine the driver's license or other age-bearing identification document of any person who appears to be under the age of twenty-one years before selling or serving any alcoholic beverage to that person, and the employee or agent has agreed in writing to abide by the policy;
(4) The employee or agent has not been convicted of a similar violation within the past twelve months; and

(5) The licensee has not had any prior violation of any statute, ordinance, rule, or regulation prohibiting the sale or service of an alcoholic beverage to a person under the age of twenty-one years on the premise where the violation occurred in the previous twelve months.
SDCL 35–2–10.1 (emphasis added).

substantial compliance requires actual compliance in respect to the substance essential to the objective of each of the five requirements. To hold otherwise, would allow a licensee to pick and choose the requirements that the licensee, rather than the Legislature, deemed necessary to obtain safe harbor.

■ [¶ 14.] The training requirement at issue here requires that the employee "... *has been certified by a nationally recognized training program approved by the Department....*" CNB concedes that the intent of this plain language was "to ensure that the employee or agent attends a certified training program that provides instruction on techniques to prevent persons under the age of twenty-one years from purchasing or consuming alcoholic beverages." Although CNB concedes that Dougherty did not attend a "Department approved" training program, CNB contends that its own training was sufficient to satisfy the statute's general objective of prevention of underage alcohol sales. To support that contention, CNB points out that in addition to its in-house training, it offered its employees a financial incentive to avoid underage sales. CNB also argues that employee turnover in the convenience store business makes it impossible for an employer to send all of its employees to out-of-town training that is approved by the Department.

[¶ 15.] However, even if CNB's efforts had some relation to the general objective of reducing underage alcohol sales, the more specific objective of SDCL 35–2–10.1(2) is to require training at a *program approved by the Department.* This plain and unambiguous language indicates that the Legislature intended that the Department, rather than the license holder, determine which training programs qualify for safe harbor protection. It also appears the purpose of this specific requirement was to give the Department, rather than the licensee, the decision to determine which programs best provide instruction on techniques to prevent underage persons from purchasing alcoholic beverages. Because the substance essential to the objective of SDCL 35–2–10.1(2) is to require attendance at a program approved by the Department, rather than other training deemed adequate by the licensee, CNB's training did not substantially comply with the statute.

[¶ 16.] Remarkably, we reached an analogous conclusion in *Brown v. State Board of Examiners in Optometry,* 263 N.W.2d 490 (S.D.1978). There, an optometrist argued that he received sufficient continuing education hours to substantially comply with a board approved training requirement in SDCL 36–7–20.1 and 20.2.[3]

---

**3.** At the time *Brown* was decided those statutes provided:

SDCL 36–7–20.1:

All registered optometrists whenever licensed in the state of South Dakota are and shall be required to take annual courses of study in subjects relating to the practice of the profession of optometry to the end that the utilization and application of new techniques, scientific and clinical advances, and the achievements of research will assure expansive and comprehensive care to the public.

*Brown,* 263 N.W.2d at 493, n. 2.

SDCL 36–7–20.2 provided:

The length of study required by § 36–7–20.1 shall be prescribed by the board but shall not exceed fifteen hours in any calendar year. Attendance must be at *a course or courses approved by the board.* Attendance at any course or courses of study are to be certified by the board upon a form provided by the board and shall be submitted by each registered optometrist at the time he makes application to the board for the renewal of his license and payment of his renewal fee. In no instance may the board require a greater number of hours of study than are available at *approved courses* held within the state and shall be allowed to waive this

Although some of Brown's hours were not approved by the State Board of Examiners in Optometry, he argued that attendance at non-approved courses constituted substantial compliance. We disagreed because the plain language of SDCL 36–7–20.2 required board-approved training.

[¶ 17.] Similarly, SDCL 35–2–10.1(2) requires that the licensee's employees attend a *Department approved* training program, and Dougherty did not attend such a program. Instead, she only received in-house training from CNB's owner. Because in-house training was not actual compliance in respect to the substance essential to every reasonable objective of the

---

requirement in case of certified illness or undue hardship.

statute, we conclude that CNB did not substantially comply with the training requirement in SDCL 35–2–10.1(2).

[¶ 18.] Affirmed.

[¶ 19.] GILBERTSON, Chief Justice, SABERS and KONENKAMP, Justices,

[¶ 20.] AMUNDSON, Retired Justice, concur.

(emphasis added). *Id.* at 493.