2003 SD 55

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Gerald JENSEN, Defendant and Appellee.**

No. 22536.

Supreme Court of South Dakota.

Considered on Briefs March 24, 2003.

Decided May 14, 2003.

Lawrence E. Long, Attorney General, Paul Cremer, Harold H. Deering, Assistant Attorney Generals, Pierre, South Dakota, Attorneys for plaintiff and appellant.

Thomas E. Brady, Spearfish, South Dakota, Attorney for defendant and appellee.

ZINTER, Justice.

[¶ 1.] The clerk of the Deadbroke Heights Road District published a notice of vacancy for the office of district trustee. The notice indicated that an election would be held on March 7, 2002. Two nominating petitions were filed, but both were allegedly defective. Gerald Jensen, the incumbent, circulated his petition prior to January 1, 2002, in violation of SDCL 12–6–4.1. Marie Slovek, the challenger, filed her petition with the district secretary, instead of the district clerk. By the time the clerk received the petition, the deadline for filing had expired. The clerk ultimately concluded that Jensen's petition was timely, that Slovek's petition was late, and therefore, Jensen was the only legal candidate. Consequently, no election was held. The Lawrence County State's Attorney subsequently initiated this quo warranto proceeding to determine who was legally entitled to the office. The circuit court ruled that Jensen legally held the office. The court concluded that Jensen's petition was valid because SDCL 12–6–4.1 did not apply to road district elections, and Slovek's petition was invalid because she did not file her petition on time. The State appeals. We reverse the ruling on Jensen's petition, affirm the ruling on Slovek's petition, and remand.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] This road district was organized in 2000 pursuant to SDCL ch 31–12A.

Lynn Stich, Les Schuchardt and Jensen were initially elected as the trustees. Each trustee served a three-year term. The elections were staggered so that one trustee was subject to election each year.

[¶ 3.] Jensen's position was open for election in 2002. SDCL 31–12A–15 provided that elections for the district trustees were to be held "on the first Tuesday after the anniversary date of the first election."[1] The first election for the district was held on March 7, 2000. Therefore, in accordance with the relevant version of SDCL 31–12A–15, the 2002 election should have been scheduled for March 12, 2002, and the deadline for filing nominating petitions was February 25, 2002.

[¶ 4.] Jensen and Slovek each circulated petitions for the election. Jensen circulated his petition on November 15, 2001, a month and one-half before the first day of the year in which the 2002 election was to be held. It was filed with the district clerk on December 10, 2001. Marie Slovek circulated her petition after the first of the year. She filed it on February 22, 2002. However, she filed her petition with the district secretary instead of the district clerk. Slovek's petition was forwarded to the district clerk who received it on February 27, 2002, two days after the filing deadline.[2]

[¶ 5.] The clerk rejected Slovek's petition as untimely and accepted Jensen's petition. Because the clerk believed there was only one valid petition, no election was held. The clerk subsequently notified the

---

1. SDCL 31–12A–15 was amended by the 2003 Legislature so that future road district elections will be held the second Tuesday in May. SL 2003, ch 158, § 1.

2. The election was incorrectly scheduled for March 7, and the deadline for filing a nomination petition was incorrectly set as February 18. However, Slovek's nomination petition was not timely using the clerk's February 18 date, or the correct date of February 25. Therefore, the scheduling mistake is not a material issue in this appeal.

Lawrence County Auditor that Jensen would serve a new three-year term as trustee.

[¶ 6.] The Lawrence County State's Attorney subsequently initiated this quo warranto proceeding against Jensen challenging his right to hold the office. The State's Attorney argued that Jensen's nominating petition was invalid because the petition was circulated too early, in violation of SDCL 12–6–4.1. The State's Attorney also argued that Slovek was entitled to the office because she had "substantially complied" with the filing statutes by filing her nominating petition with the district *secretary* before the deadline. Both the State and Jensen moved for summary judgment. After a hearing, the circuit court denied the State's motion and granted summary judgment to Jensen.

[¶ 7.] The State appeals raising two issues:

1. **Whether the early circulation prohibition in SDCL 12–6–4.1 was applicable to road district elections.**

2. **Whether Slovek was entitled to the office of district trustee.**

### STANDARD OF REVIEW

[¶ 8.] Our standard of review for the grant or denial of a summary judgment is well settled.

> In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and [established] entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party[,] and reasonable doubts should be resolved against the moving party.... Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied.

*Braun v. New Hope Township*, 2002 SD 67, ¶ 8, 646 N.W.2d 737, 739 (quoting *South Dakota State Cement Plant Commission v. Wausau Underwriters Ins. Co.*, 2000 SD 116, ¶ 9, 616 N.W.2d 397, 400–01). "The correctness of [a] claim for a writ of quo warranto is clearly a question of law. We review questions of law de novo, without deference to the decision of the trial court." *McElhaney v. Anderson*, 1999 SD 78, ¶ 6, 598 N.W.2d 203, 205.

### DECISION

[¶ 9.] **1. The early circulation prohibition in SDCL 12–6–4.1 was applicable to road district elections.**

[¶ 10.] Quo warranto proceedings may be used to determine whether a person who holds a public office, is in legal possession of that office.

> The writ of quo warranto is derived from the old English practice of inquiring by what authority the king supported his claim. Black's Law Dictionary 1417 (4th ed.1957). In more recent times, it has also been used to command a public officer to show "by what warrant he exercises such a franchise, having never had any grant of it, or having forfeited it by neglect or abuse." *Id.* "[W]e have held that quo warranto is the proper proceeding to determine title to and possession of a public office." "A judgment in quo warranto shall be rendered upon the right of the defendant, or both upon the right of the defendant and upon the right of the party alleged to be entitled to office, as justice shall require."

In South Dakota the common-law writ of quo warranto has been statutorily recognized. SDCL ch 21–28 provides for the remedy of writ of quo warranto.

> Any person may bring a writ of quo warranto:

(1) When any person shall usurp, intrude into, or unlawfully hold or exercise any public office . . . ;

*McElhaney*, 1999 SD 78, ¶¶ 8–9, 598 N.W.2d at 205–206 (internal citations omitted). There is no dispute that the office of district trustee is a public office, and that quo warranto is an appropriate remedy to determine the right to that office. The first question is whether Jensen's nominating petition was invalid because it was filed prior to the first day of the calendar year of the election, in violation of SDCL 12–6–4.1.

[¶ 11.] A number of statutes govern the times for circulating and filing petitions for road district elections. Initially, SDCL 31–12A–17 requires the filing of the nominating petition with the district clerk no less than fifteen days before the election.

The trustees to be elected at the initial election, shall be nominated by the voters in attendance at the meeting in which the organizational election is held. Any trustee to be elected at subsequent elections, shall be nominated by *filing with the district clerk* not less than *fifteen days before any subsequent election,* certificates of nomination for the offices of trustee. The certificates shall be in writing and shall contain the name of the candidate, residence, business address, and the office for which the candidate is named, and shall be signed by at least five percent of the qualified voters.

*Id.* (emphasis added). In addition, the pre-July 1, 2002 version of SDCL 31–12A–15 [3] provided that the "election shall be conducted according to chapter 9–13." SDCL 9–13–7 required that nominating petitions be submitted pursuant to the procedures in SDCL ch 9–13 and ch 12–6.

One of those procedures is found in SDCL 12–6–4.1, and that statute expressly prohibits a candidate from circulating a petition "prior to the first day of January of the year in which the election will be held."

[¶ 12.] Although Jensen circulated and filed his petition before the first day of January in the year of the election, the trial court held that SDCL 12–6–4.1 was not applicable. The court reasoned that because the date of a road district election was related to the anniversary date of the first district election, there could be an occasion where a petition could not be circulated after the first day of January as required by SDCL 12–6–4.1 and still filed at least fifteen days prior to the election as required by SDCL 31–12A–17; (*i.e.,* an election occurring during the first fifteen days of the calendar year). While this problem is theoretically possible, we disagree with the rejection of a statutory election requirement simply because there is a hypothetical election scenario in which the statutes may conflict.

[¶ 13.] We have rejected claims of statutory invalidity based on hypothetical factual scenarios. "Judicial machinery should be conserved for problems which are real and present or imminent, not squandered on problems which are abstract or hypothetical or remote." *Gottschalk v. Hegg*, 89 S.D. 89, 95, 228 N.W.2d 640, 643–644 (1975) (further citations omitted). Therefore, in the related area of determining the constitutionality of statutes, " 'the mere fact that there might be a case[,] where to apply the provisions of [the statute] would result in [a constitutional violation,] does not render the [statute] unconstitutional, but merely prevents

---

**3.** This version of SDCL 31–12A–15 governed the election for road district trustee because the election would have been held prior to the effective date (July 1, 2002) of a new version of the statute. The new version now requires adherence to township election law (SDCL ch 8–3), rather than municipal election law (SDCL ch 9–13).

its application[4] in such a case.'... [So also, we have recognized that] '[t]he potential vagueness of a statute, as applied in hypothetical cases, is no ground for holding the statute unconstitutional. A defendant cannot claim that a statute is unconstitutional in some of its reaches if it is constitutional as applied to him.'" *City of Pierre v. Russell,* 89 S.D. 70, 73–74, 228 N.W.2d 338, 341 (1975) (internal citations omitted). The same rule should apply here.

[¶ 14.] We also observe that the plain language of SDCL 31–12A–15 required that road district elections be conducted under the municipal election procedures in SDCL ch 9–13. Those statutes unambiguously directed application of SDCL ch 12–6, which included SDCL 12–6–4.1.

[¶ 15.] In light of these unambiguous statutes, rules of statutory construction require application of the early circulation prohibition.

The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used.

Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed.

*Martinmaas v. Engelmann,* 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611 (quoting *Moss v. Guttormson,* 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17). Furthermore, "[t]here is a presumption against a construction which would render a statute ineffective or meaningless." *Yankton Ethanol, Inc. v. Vironment, Inc.,* 1999 SD 42, ¶ 15, 592 N.W.2d 596, 599 (quoting *In re Real Estate Tax Exemption for Black Hills Legal Services, Inc.,* 1997 SD 64, ¶ 12, 563 N.W.2d 429, 432). Jensen's construction, rendering SDCL 12–6–4.1 inapplicable to road district elections, ignores the statutes plain prohibition and incorrectly renders SDCL 31–12A–15, a specific road district election statute, meaningless.

[¶ 16.] We do acknowledge that there could be a short period of time when the early circulation prohibition (as required by SDCL 12–6–4.1) could conflict with the fifteen-day advance filing requirement (in SDCL 31–12A–17). However, the facts in this case did not present such a conflict. Because this District's election was held in March, nominating petitions could have easily been circulated after January 1 and at least fifteen days before the election. Under these facts, both statutes could be applied and given effect.[5] We therefore decline to invalidate a statute based on a hypothetical scenario. That conclusion is especially appropriate where the plain language of both SDCL 31–12A–15 and 12–6–4.1 can be given effect.

[¶ 17.] **2. Slovek was not entitled to the office of district trustee.**

---

4. Although Jensen has not claimed the relevant statutes are unconstitutional, he does argue the applicability of SDCL 12–6–4.1, and we find these rules of construction persuasive in this case.

5. We note that Jensen's hypothetical issue is also moot because the Legislature has changed the statutes. The version of SDCL 31–12A–15 that became effective July 1, 2002, provides that "[t]he election shall be conducted according to *chapter 8–3* ..." (emphasis added). SDCL ch 8–3 governs township elections. Therefore, the municipal election statutes no longer govern road district elections.

[¶ 18.] SDCL 31–12A–17 requires that candidates for district trustee *shall* file their nominating petitions with the district *clerk* no less than *fifteen days prior to the election.* SDCL 2–14–2.1 provides that when a statute uses the term "shall," it "manifests a mandatory directive and does not confer any discretion in carrying out the action so directed."

[¶ 19.] It is undisputed that Slovek did not file her petition with the *clerk* before the deadline. On the contrary, she filed it with the *secretary,* and the secretary forwarded the petition to the clerk, who received it two days after the deadline. Therefore, Slovek's petition was not filed in compliance with the requirements of SDCL 31–12A–17.

[¶ 20.] The State, however, argues that because Slovek filed her petition with the secretary before the deadline, she substantially complied with SDCL 31–12A–17. Substantial compliance with a statute requires actual compliance with every reasonable objective of the statute.

> Substantial compliance with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute. It means that a court should determine whether the statute had been followed sufficiently so as to carry out the intent for which it was adopted. Substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.

*In the Matter of License of Cork 'n Bottle, Inc.,* 2002 SD 139, ¶ 12, 654 N.W.2d 432, 435 (quoting *Wagner v. Truesdell,* 1998 SD 9, ¶ 7, 574 N.W.2d 627, 629) (further citations omitted). *See also Larson v. Hazeltine,* 1996 SD 100, ¶ 19, 552 N.W.2d 830, 835.

[¶ 21.] Here, the State's substantial compliance argument is very similar to the one rejected by the Wisconsin Supreme Court in *State ex rel. Ahlgrimm v. State Elections Board,* 82 Wis.2d 585, 263 N.W.2d 152, 157 (1978). In *Ahlgrimm,* a candidate for a judicial election filed his petition on time, but not in the proper place. The Wisconsin State Elections Board refused to certify Ahlgrimm as a candidate. The Wisconsin Court held that filing a nomination petition in the wrong location was not substantial compliance with a filing statute.

> The time and place of filing nomination papers cannot be separated. *In order to be timely, the papers must be filed in the proper place.* If the papers are initially filed in the wrong place, the error must be corrected and the papers filed in the right place within the filing deadline. Consistent with our earlier opinions ... we view [the statute] governing the time of filing and [the statute] governing the place of filing nomination papers ... to be mandatory. Failure to timely file the papers in the proper place prevents the candidate's name from being placed on the ballot.

*Id.* at 157 (emphasis added) (internal citations omitted).

[¶ 22.] In the present case, Slovek did not substantially comply with the time or place requirements. Slovek filed her nomination petition with the secretary, and the clerk did not receive the petition from the secretary until two days after the filing deadline. In light of the mandatory language of SDCL 31–12A–17, the clerk correctly determined that Slovek's petition was not timely, and it did not entitle her to be placed on the ballot. Actual compliance with statutory time and place of filing requirements was essential to the reasonable objectives of SDCL 31–12A–17.

[¶ 23.] The State's reliance on two of our prior opinions involving substantial compliance in elections is misplaced. In *Burns v. Kurtenbach,* 327 N.W.2d 636 (S.D.1982), two school board candidates failed to sign the circulator's verification on or before the filing deadline for petitions. The petitions were timely filed, and there does not appear to have been a claim that any of the voters' signatures on the petitions were improper or invalid. The problem was that the candidates signed the circulator's verification three days after the filing deadline. In rejecting the argument that the doctrine of substantial compliance could excuse the untimely verifications, we stated "[w]e conclude that the statute clearly and unambiguously requires that the circulator's verification be executed prior to the filing deadline." *Id.* at 638. Thus, *Burns* requires compliance with explicit statutory requirements.

[¶ 24.] *Larson,* 1996 SD 100, 552 N.W.2d 830, is also inapposite. *Larson* involved a requirement that petition circulators place their "complete address" on their verification forms. Two circulators put their names, street addresses and county on their verification forms, but did not include their city of residence. The petitions were otherwise in proper form and timely filed with the proper officer. Noting that the applicable statutes and rules did not expressly require the circulators' city of residence, we concluded that there had been substantial compliance with the requirement of a "complete address." However, we also ruled that the result would have been different if an *express* statutory requirement had been omitted. In past cases involving the validity of ... petitions, we have begun our substantial compliance analysis by examining the items expressly enumerated in the statute. Thus, *where the statute required both the residence address and post office address, both are considered*

*essential elements and the omission of one or both is not a technicality to be disregarded. . . . Here, we are not presented with omission of an item expressly required by statute or rule;* the circulator's city is not specifically required as part of the oath by the terms of the rule. *Thus, it cannot be said that the circulator's city is an essential element* of the circulator's verification based on the language of the rule itself.

*Larson,* 1996 SD 100, ¶ 22, 552 N.W.2d at 836 (emphasis added).

[¶ 25.] In this case, SDCL 31–12A–17 expressly required the filing of petitions with the district clerk. Slovek did not do so. By the time her petition reached the clerk, it was not timely. On these facts, the State has not shown that Slovek substantially complied with the essential requirements of the statute.

[¶ 26.] The State finally argues that if neither Jensen nor Slovek were legally on the ballot, then Jensen should hold over until the next election. However, the trial court did not rule on this issue because it concluded that Jensen was the rightful office holder. We therefore decline to address the issue. We reverse on Issue 1, affirm on Issue 2, and remand for any remaining issues.

[¶ 27.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.

[¶ 28.] SABERS, Justice, concurs in result.

SABERS, Justice, concurring in result.

[¶ 29.] I concur in result but would affirm the trial court's holding "that Jensen legally held the office" for a different reason. Jensen was the incumbent and having been duly qualified for the office, he holds that position until his successor is

qualified and sworn. *See* SDCL 3–14–1 (providing in part, "[e]xcept when otherwise expressly provided, every lawful incumbent of any public office, with a definite term, upon the expiration of such term shall continue to discharge its duties until his successor shall have been elected or appointed and has qualified[.]") Since that has not happened, Jensen holds the office.

[¶ 30.] There is no evidence in this quo warranto proceeding to determine otherwise.